Good morning, Your Honors. Kathleen Bliss on behalf of Mr. Hunsberger. I'd like to reserve three minutes for rebuttal, please. A vague law is no law at all. Justice Gorsuch recently stated what happens when the government cannot hail someone into court in the first place, and that's really what this case is about, is that, as charged, the coupling of the Drug Conspiracy Statute, 21 U.S.C. 846, with a school zone statute, which is 21 U.S.C. 860, with the coupling where mixing two mens reas, that creates a vague statute that's unconstitutionally permissible. I see this so much as a vagueness issue, as a statutory construction issue, and you raise an interesting argument that the phrase offense in the Conspiracy Statute has to refer to the separate 860 offense, which is a separate offense for Blockberger purposes from the 841A offense. That's an interesting argument. It's not a vagueness argument. It's a statutory construction argument. How do you get to do that argument on an appeal from a guilty plea with a waiver of appeal? Well, if it is a statutory construction argument, then how are we construing the mental intent? The parties agreed how to construe that. They construed an offense at the — this was actually raised at — in the proceedings below. They agreed that the way to read it was that the school element did not have to be the object of the conspiracy. You raise an interesting argument that maybe that was wrong, but on the record, everyone agreed that that's how you should read this statute, and the plea and everything went forward on that basis. That's not a vagueness argument. Your Honor, I submit that it is a vagueness argument, because no matter what might have been waived with any admissions of the parties, when you look at the statute and what he pled guilty to as charged in the second proceeding indictment, when you look at that with 846, the conspiracy with one mens re, the object of which is a violation of 860, which is essentially a strict liability offense, when you couple those together, how are we going to interpret it? That's the whole problem. So no matter — it is a convoluted and messy record, because at the time, the case that — that I think everyone felt bound by was the Pitts case from this circuit in 1990. However, that was not a conspiracy to violate 860. It was purely an 860 case, and there this circuit held that it's a strict liability offense. And I don't think there's any dispute that that is where we are right now. Whether it's constitutionally permissible, that's another issue that's not before this Court. And I'm not suggesting that we look at that. I'm just suggesting that what — what was he convicted of? What elements were reached by the government? What was satisfied? Was it satisfied that a knowing intent to agree to a certain object of which 860 is the object with a separate men's right? Is that constitutionally permissible? And I would submit that it is not. So with respect to the waiver, you cannot waive a constitutional defect, something that wouldn't allow the government to bring him into court in the first place. So Mr. Hunsberger could have thrown his hands up, agreed to everything, which is essentially he did not dispute it. That's where we are. But if you look at the coupling of those two statutes, do we really know what Congress intended? No. In this Court, as the Davis case makes very clear — Roberts, you make essentially the argument that the phrase, an offense, should be read to include the separate offense of 860, and therefore, it had to be an element of the conspiracy charge that he knew that the home was within 1,000 feet of this day school. That's essentially your argument. And that argument has some force textually to it, but that's just a missing element argument. You're saying the party stipulated to the wrong elements. Wouldn't the remedy for that be seek to withdraw the plea? I didn't plead to the right offense. The elements weren't stated correctly. It's a Rule 11 violation. Why is this a constitutional issue, if it's just a mistake in how to read the statute? I don't think it's — I don't know how to read the statute, Your Honor. I don't think we know how to read the statute. And that's where you go to Davis in the direction of Justice Gorsuch about how to not allow a court to substitute its reading of the statute, because that's where we are. And, you know, certainly was it a knowing and voluntary plea? That's really not before the court. It's a messy record. Maybe he has an ineffective assistance of counsel remedy, but he has no remedy against the government if the statute is facially void and in violation of due process. So I don't think it's a statutory interpretation, because I don't know how to interpret it, unless you read it together. As far as the mens re goes, that's what we're — what is the mens re? Is it strict liability, or is it knowingly? We don't know. You said in your brief that the object of the offense has to be the 860 offense, and therefore he had to agree that there would be possession with intent to distribute, and he had to agree that it would be within a — you told us what your theory is. What your theory is for the mens re, but it's not a vagueness issue. Well, I do think it is a vagueness issue, because you're not satisfying the object of the conspiracy, distributing the drugs in a school zone, being the object, still have to deal with the 860 and what the mens re would be for that, because that's another element that's contained within the object, the agreement itself. If not, and we address this in the brief, then you're just back to a garden-variety drug-trafficking conspiracy under 846. So if you just look at it in that way, then it's just a drug-trafficking conspiracy. And so then why would you have an additional element of 860 added? Isn't that just an enhancement? That's a great question. It can't be the way it's charged and the way you're grouping. Why not? Because it's the object of the conspiracy that I think if you were — It boosted his possible sentence, correct? It definitely did. And I would note that even the government did not request that the enhancement apply for 860. I understand. But I mean, statutorily, the effect of it is — Right. It extends the length of the possible sentence. But I think in a charge, even an enhancement has to be constitutionally sound and has to be proven beyond a reasonable doubt. He could not admit that he knew that it was within a school zone. He just could not dispute it. And that was part of the problem with this messy record. And I think it exemplifies why, with all of the confusion, that it wasn't — it wasn't a constitutionally sound statutory violation of coupling 846 with 860. So that's why I don't think it's just an enhancement, Your Honor. There's — Well, they could have proceeded on this just as a — you know, a typical drug conspiracy. Of course they could. Right. And the only advantage they got was to increase his possible sentence, the way I saw it. Right. And it doubled it. Right. Is what it — well, it doubled the maximum, statutory maximum, and it doubled the supervisory lease violation. Right. But they didn't do that. They didn't seek an enhancement under the guidelines, which they could have done. They didn't file it as a separate enhancement. No. But they charged it as count one, a conspiracy, the object of which was to violate a school zone. So it wasn't like a special sentencing factor that was set out in a different way. I think that would have been a notice. Well, just give me a — just — you know, it gives the government — it gives the government more leeway, I guess, to ask for. But that's the whole point, is that we don't want to give the government more leeway — I understood. I understand what you're saying. No, but you hit the nail on the head. We've got to construe it against the government. I think the law is very clear. If there's an ambiguity, which at the very minimum there is an ambiguity, we construe it against the drafter. And certainly, I think it's a problem, an ambiguity within the charge itself and how 846 is being used with 860 that creates a constitutional defect. And, you know, Congress could clear that up very easily. Do you want to save some time for rebuttal? I do, Your Honor. You've got four minutes left. Certainly, I'll save the rest of my time for rebuttal. Thank you. Thank you. May it please the Court, Adam Flake for the United States. The government's position is that this argument was waived by the binding plea agreement and particularly the specific language in the plea agreement saying that the defendant agreed to waive the right to appeal several things and any other aspect of the conviction. The government's position is this argument comes within that language. There are exceptions to that in our case law. There are exceptions. What do you make if there's — if the sentence is illegal or there's a — which includes a constitutional? Well, the — in the Vence's case, I think I'm pronouncing it correctly, the Court explained what a — what an illegal sentence was, and that's a sentence that is — that is — the punishment is greater than that which is authorized by the statute. So it's a very specific meaning that is given to an illegal sentence. It certainly does not mean a conviction that has anything wrong with it generally because then the appellate way would have no force at all. Assume for a moment that she were to prevail on her argument, on the defendant's argument here, what's the result? If the — if she were to prevail on her whole argument. Her argument. Her vagueness argument, constitutional vagueness argument. So if — I mean, I guess if she was — if he was convicted under a statute that is constitutionally vague, the — I guess the remedy would be to vacate the conviction and to strike the statute altogether. No. Doesn't that qualify? One of our exceptions? Now, if you look at it the way Judge Collins did at the first — with the argument when counsel first got up there, this is nothing more than just a statutory interpretation issue, then maybe the — the waiver applies. So I guess what the Court is saying is that any sentence imposed at all in violation of that statute would be in excess of the — of what was authorized by the statute because the statute doesn't authorize to — I'm not — I followed the logic of it. I'm not aware of any case that actually addresses it in those terms. I think it's — the word illegal sentence is used much more specifically, which is, you know, the mandatory — the mandatory max was 10 and you got 15 years. Then you can appeal that. And I think that's how the term illegal is used. Okay. I just wanted to note that in the plea agreement on — on ER-66, there was a clause that the defendant specifically admitted that his — the defendant specifically agreed that his admissions satisfied every element of the statute. And then a couple of pages later, he specifically agreed to waive his right to appeal in any aspect of his conviction. And I think that — I think that concludes the — I mean, I think that the Court could conclude the inquiry there and just say that this is waived. Would he — would it be open to him to file a motion to withdraw the plea on the grounds that — that in fact the agreed-upon construction was wrong and that there was an extra element and therefore the whole plea should be voided and everything should be undone? Your Honor, the — the plea agreement doesn't bar him from arguing that — doesn't bar him from appealing and arguing that the plea was involuntary. It specifically says in there — I mean, we couldn't bar it anyway if we wanted to, but it specifically says that he reserves a right to argue on appeal that the plea was involuntary. And so, yet, nothing would prohibit him from arguing that. But counsel was very clear in her briefing, and again, just now, that they're — they're not arguing that. They're not seeking to withdraw the plea. Well, I do have the footnote that kind of suggests that — I mean, this was a very messed-up plea in terms of no one got the statutory provisions right. Even with the corrections made on the fly, the supervised release was still wrong. You know, are there grounds to set aside the plea here? Your Honor, there may well be if it's — if it's briefed and argued and — and, you know, if we get a brief laying out their arguments, then we will respond to it as appropriate. But at this point, where they're specifically saying that they're not — they're not pressing that argument, I don't — I don't think that I can make a concession on that point right now, absent understanding what their argument would be. Does it make a difference that the probation office looked up everything and got it all correct before the sentencing, and it still went forward at that point? It could, Your Honor. And again, I just — I don't feel comfortable at this point making a concession on something that's not — that hasn't been raised and that we haven't — that we haven't tracked down and that I haven't gotten permission from my superiors to make a concession about at this point, because it's just — as I understand it, and I think we agree, it's just not a live issue at this point. But if the plea were set aside, then this — the — the whole case would be at large again, and you could go forward with the whole — Certainly, Your Honor. We would — we would reinstate the charges and go ahead and try him for the much more serious counts that were dismissed as part of the agreement. Why don't you just address the merits for — Certainly. The — the case that I cited in the briefing, FIOLA, I believe it is pronounced, it construes a different conspiracy statute than the one that is at issue here. But I think it is dispositive. I think the — the defendant's argument rests on — they put a lot of weight onto the phrase, the commission of which was the object or the — of the attempt or conspiracy. Their whole argument turns on that that — that language somehow heightened the mens rea required for a — a conspiracy conviction of the — of 860 versus a straight conviction of 860, which everybody agrees. They — they don't have to know the distance of the school. But I — I think that they're just putting too much weight onto that phrase. And for one thing, the — in the FIOLA case, what happened there was, there was a conspiracy to assault a federal officer. Everybody agreed that — that the crime of assaulting a federal officer didn't require them to know that they were — that the person was a federal officer. And so the question was, does the conspiracy have to have as its object assaulting somebody that you know is a federal officer? And the Court said, no, it's the same mens rea. And the logic of it was that this is the — it's — it's not like — it's not like the — the felon in possession laws, where it separates entirely innocent conduct from guilty conduct. You have planned an assault, and you — your chosen victim happens to be a federal officer, but you don't escape liability for it just because you didn't know. That — that was the reasoning of that FIOLA case. And I think the same logic applies here. They — they just — it's not like there was innocent conduct. They — they had a conspiracy to deal drugs. It was on them to make sure that they weren't within 1,000 yards of a — or 1,000 feet of a school. But under Blockberger and Apprendi, the 841 offense is a different offense from the 860 offense, true? That's correct, Your Honor. So then when it says that the punishment shall be the same as, you know, the offense that is the object of the conspiracy, doesn't that — if there's a difference between the offenses, doesn't that change the object and therefore the proof that goes with it? Again, Your Honor, I — I think that that language in — in 8 — in 846, the — the object of the conspiracy, I mean, they had — in this particular case, they had a conspiracy, and the conspiracy was to deal drugs or to — to ship drugs from a post office, and it happened to be within 1,000 feet of a schoolyard. And there's not any question that they violated 860 by doing that. The question is whether — whether they needed to intend that that — or to know that that post office was — What was the house that was near? Was it the post office? Unless I — I may have looked at it wrong, but I — my understanding was they took the drugs to a post office that was within 1,000 feet of the Las Vegas Day School. That's my recollection. And I apologize if I haven't turned around, but I think that's what it was. But, again, the — the — the point of it is that they had a conspiracy to violate that statute. They didn't need to know that it was within 1,000 feet of the school. When they had the agreement, and it happened to be within 1,000 feet of the school, they had the agreement to violate the statute. And so I don't — I don't think there's a basis for — for adding in the — the additional mens rea requirement. I'd also note the — the FIOLA case contradicts 18 U.S.C. 371, and that statute also — it's not — I'm not saying that it's exactly the same, but that statute also contains a phrase, one or more such persons do act to affect the object of the conspiracy. And in that — that — the Court didn't specifically address that argument, but it's not like that language in 371 added an — an — a knowing element to the knowledge that the person was assaulting a Federal officer. And I don't — and so I don't think that the language in 860 that they're relying on imports that additional intent requirement. If the Court doesn't have any further questions, I'll — I'll submit. Okay. Thank you. Thank you. FIOLA just doesn't apply. It's talking about the 371 conspiracy, which is entirely different. It requires an Everett Act. The Supreme Court explained what a drug conspiracy requires in Shabani. And that — But 371 uses the same key word, any offense against the United States. So your argument, if it textually is correct, would seem to apply equally to 371 as to 846. And if we have a case that says the argument's wrong as to 371, why don't we have to reach the same conclusion under 846? Because there are two key distinctions. 371 requires an Everett Act. 846 does not. But it requires an agreement to perform the object of the conspiracy. And so there has to be knowledge by the defendant as to the object of the conspiracy. There is no Everett Act requirement. And most recently, last year, this Court decided the Espinoza-Valdez case. And I think that tells you what the elements are for a drug conspiracy. And there has to be an agreement to accomplish an illegal objective and the intent to violate an underlying offense. So here, the underlying offense, of course, is the drug statute, the drug trafficking statute, 841. However, you have to, in order for there to be a conspiracy under 846, there has to be an object of that conspiracy. It's a separate element. And so this — And the object is 860? I'm sorry? Yes. The object is 860? Correct, Your Honor. And so that's why it's not just a sentencing enhancement. It is the conspiracy that the government alleged. And if we just poo-poo 860 and say, oh, it's just because those guys happen to be dealing drugs within a thousand feet of the school zone or arcade or park or whatever it is, then we lose sight of what Mr. Hunsberger actually agreed to, the object of the conspiracy, that being dealing drugs in a school zone. It's entirely different from 841 coupled with 860, because those are the substantive offenses. Here we have a conspiracy, so we're in a different world. We're one step removed from the actual drug trafficking itself. We're focusing on the agreement to do something, and that something happens to be drug trafficking in a school zone. And they can't sever it off. Otherwise, then you're just stuck with a garden variety drug trafficking conspiracy. So we've got two different statutes at play here. Drug trafficking conspiracy that requires certain things, and now a drug trafficking conspiracy within a thousand feet of a school zone. Two separate charges. And we're submitting to you that because of the different mens rea required with conspiracy, knowledge, and then a strict liability, 860, that that cannot be, and that's why it is void for vagueness on its face. Do you agree with the government's counsel that you're not challenging the plea as involuntary? No, Your Honor. Not at this time. No. That's a really intriguing question to me personally, because, as I said before, I didn't — class had not come out yet and had not been published. Once class was published, because I always found 860 to be offensive and that there was a problem with it. And I think everyone knew there was a problem with it. That's why we sought a variance, because — Well, I'm raising the rule — the arguable Rule 11 violations here in the taking of this plea. Are you seeking to have the plea set aside? Are you challenging the voluntariness? Are you agreeing that it was reaffirmed because everything got cleaned up before sentencing, when the plea was finally taken? I don't think everything got cleaned up before sentencing. At this point, in retrospect, I think he pled guilty to an illegal sentence. That being — That I understand. Yeah. But the other issues about the wrong statutory maximum, et cetera, are — which you did mention in your brief, are you not claiming that — No, Your Honor. — before this Court that we should do anything with that? That's right, Your Honor. I think his remedy would be ineffective assistance of counsel by my allowing him to plead to a statute that I believe is unconstitutionally vague. That's his remedy. But it doesn't answer the remedy that he has with the United States, to be able to hail him into court in the first place. And that's why I — Is it relevant at all that the defendant himself is a lawyer, to his voluntariness or — or not raising some of these issues? That's a really good question, Your Honor. I don't think it's relevant because I don't think — perhaps on a voluntariness issue, maybe, but he wasn't a practicing lawyer at the time, and I — I just don't think that it's something that came into play. Could it have been because the variance was denied? And I'm sure you're thinking, well, if he got the variance, would you even be here? Probably not. But I think that the judge definitely considered the 70-month sentence. And again, we're not here on the money laundering. That's not an issue here. He's still convicted of that. But we are challenging the constitutionality. I'll let you go over. I'm sorry. No, that's okay. Thank you, Your Honors. Thank you very much. We appreciate your arguments, counsel. Thank you. Thank you.
judges: Paez, Collins, Choe-Groves